In re Cheryl Kay NAVE, Debtor.

Cheryl Kay Nave, Plaintiff,

v.

Community America Credit Union,
f/k/a Santa Fe Credit Union,
Defendant.

Bankruptcy No. 99–40928.
Adversary No. 99–7085.

United States Bankruptcy Court,
D. Kansas.

Dec. 15, 2003.

Fred W. Schwinn, Consumer Law Center, P.A., Livermore, CA, for Debtor.

Jan Michael Hamilton, Topeka, KS, trustee.

### MEMORANDUM OPINION

ROBERT E. NUGENT, Chief Judge.

This adversary proceeding comes before the Court on Cheryl Kay Nave's ("Plaintiff") supplemental motion for summary judgment on her adversary complaint alleging violations of the Truth in Lending Act ("TILA")[1] and the Kansas Consumer Protection Act ("KCPA")[2] as a result of TILA disclosures made by the Community America Credit Union ("Defendant") in conjunction with two vehicles it financed.[3] Specifically, the Plaintiff contends that Defendant's failure to include the amount of

---

1. 15 U.S.C. § 1601, *et seq. See also,* Regulation Z, 12 C.F.R. Part 226 (2001) (hereafter "Reg Z").

2. KAN. STAT. ANN. § 50–623, *et seq.*

3. Dkt. 62.

premiums for credit life insurance and credit disability insurance in the "Amount Financed" constitutes a violation of TILA and is an unconscionable practice under the KCPA. The Defendant's motion for summary judgment on the issue of recoupment is also before the Court.[4]

*Procedural Background and Findings of Fact*

This matter is before the Court for a second time.

Plaintiff presented the following uncontroverted facts by her first summary judgment motion.[5] Plaintiff entered into two car loans and security agreements on August 31, 1998.[6] One loan was secured by a 1992 Ford Explorer ("Ford loan") and one loan was secured by a 1984 Chevrolet Silverado ("Chevy loan"). The Defendant made the following TILA disclosures concerning the Ford loan: Amount Financed—$11,657.40; Finance Charge—$3,588.92; Total Payments—$16,036.15; and Annual Percentage Rate ("APR")—13.25%. The Defendant made the following TILA disclosures concerning the Chevy loan: Amount financed—$5,858.62; Finance charge—$1,613.85; Total Payments—$7,768.44; and APR—15.90%. Plaintiff's first payment under both the Ford loan and the Chevy loan was due October 15, 1998.

For both the Ford loan and the Chevy loan Defendant included the amount of insurance premiums in the Total Pay-

ments figure and separately disclosed, outside the TILA disclosures box, the total amount of the respective insurance premiums.[7] The Plaintiff sued Defendant under § 1638(a)(2) of the TILA and Reg Z ¶ 226.18 for incomplete disclosure of the "Amount Financed" when the Defendant did not include all or part of the premiums for credit life insurance and credit disability insurance. It is conceded that the insurance premiums did not have to be disclosed as part of the Finance Charge because the Defendant satisfied the conditions for exclusion: (1) disclosure that the insurance was not required; (2) disclosure of the amount of the premium for the initial term of insurance coverage; and (3) Plaintiff elected the insurance.[8] It is also undisputed that the Plaintiff had the ability to cancel the insurance coverages at any time.

The Plaintiff moved for summary judgment on her complaint.[9] On this first summary judgment motion, Judge Pusateri ruled that he had insufficient facts to grant summary judgment and denied Plaintiff's motion.[10] This Court adopts Judge Pusateri's findings of fact set out therein, except as supplemented below. He boiled the case down to whether Plaintiff's payment for the insurance coverage was in advance or in arrears. In other words, if the Plaintiff was going to pay premiums for insurance already provided, the Defendant had effectively "financed"

---

4. Dkt. 68.

5. Dkt. 38.

6. It is undisputed that the transactions at issue were subject to TILA and were closed-end credit transactions.

7. Had the Defendant included the insurance premiums in either the Amount Financed or the Finance Charge as Plaintiff contends Defendant was required to do under TILA, the Total Payments would have been equal to the

Amount Financed plus the Finance Charge. Because this calculation did not result, it was apparent that the Defendant failed to include the insurance premiums in the Amount Financed or the Finance Charge.

8. *See* Reg Z, ¶ 226.4(d)(1); 15 U.S.C. § 1605(b).

9. Dkt. 38.

10. Dkt. 47.

the insurance by deferring the Plaintiff's obligation to pay for it and that amount should have been included in the Amount Financed. If, however, the Plaintiff was paying for insurance in advance, then the Defendant was not deferring payment for a presently or previously received benefit and could not be said to be extending "credit." In that event, the insurance premiums would not be included in the Amount Financed. Because Judge Pusateri could not determine from the record before him whether the insurance premiums were to be paid in advance or in arrears, he denied summary judgment on the TILA claim. Judge Pusateri further affirmatively held that even if the Plaintiff were successful in proving a TILA violation on these facts, it would not rise to the level of an unconscionable act and would not support a per se violation of § 50–627 of the KCPA as Plaintiff advocated.

Following Judge Pusateri's summary judgment ruling, the Plaintiff issued requests for admission, received responses, and filed her supplemental motion for summary judgment, relying heavily upon Defendant's responses in support of her case.

In responding to the requests for admission, the Defendant states that, with respect to the Ford loan, the note was signed on August 31, 1998, the date the disclosures were made, and that the first insurance premium was paid by Defendant and credited against Plaintiff's principal balance on September 25, 1998. Plaintiff's first payment was due on October 15, 1998. According to the responses, the Defendant buys blanket credit disability and credit life insurance for its credit union members. Those members wishing to participate in insurance elect to do so when they incur credit. The Defendant causes the monthly premium for the group to be paid on the 25th of each month and then spreads that premium across the participating members by charging each member his or her ratable share based on the amount of credit a member has outstanding on that date. Thus, in the case of Plaintiff's Ford loan, the first insurance premiums were charged on September 25, 1998 and added to her principal balance as of that date even though no payment was due on her loan until October 15. These premiums were in the amounts of $16.78 for disability and $11.54 for credit life.

The Chevy loan was made on the same day as the Ford loan and provided for the same first payment due date of October 15, 1998. In following the same protocol as set out above, the Defendant paid a disability premium of $8.43 and a credit life premium of $5.80 on September 25, 1998 and added those amounts to the principal balance of the Chevy loan.

The payment ledgers attached to Plaintiff's requests for admission reflect that both the Ford loan and the Chevy loan were a refinance or restructuring of a preexisting loan. In the case of the Ford loan, the payment ledger shows a loan balance of $3,607.48 going back as far as July 1996. The Ford loan was added to the principal balance in May 1998 and refinanced on August 31, 1998. In the case of the Chevy loan, the payment ledger shows a new loan in the amount of $4,399.22 was originated in November 1997 and refinanced on August 31, 1998.

Nothing in the requests for admission directly solicits the information that Judge Pusateri deemed critical to his analysis. In denying summary judgment, he stated "the relevant question is not when the insurance charges were added to the loan, but whether, when they were added, they were to pay for insurance coverage for a

past period or for a future period."[11] Instead of addressing what Judge Pusateri deemed important, the parties have focused on the timing of the insurance premium charge to the loan.

Bearing in mind that on summary judgment, any factual doubt is to be resolved in favor of the non-moving party and that summary judgment does not lie where there remains a factual controversy,[12] this Court concludes that, at best, all the Plaintiff can prove here is that premiums in the gross total amount of $42.55, the sum of the four payments credited to principal on September 25, 1998, were "financed" and could arguably have been included in the Amount Financed, but only if, under the law of this case as established by Judge Pusateri, the premiums were paid for coverage provided prior to September 25. Even though the amount of the insurance premium was determined and "charged" to the account as of September 25, the Defendant states in its answers to requests for admission that this amount is not included for purposes of calculating the finance charge. Rather, the computer calculation of the finance charge makes the assumption that the first insurance charge to the account is made on the payment due date, October 15, 1998 and thus, accrues no interest. In short, the insurance premium is not, in reality, "financed" as the Court understands that term.[13]

In fact, it appears from the payment ledgers that insurance premiums were paid and credited to principal each month from the inception of the loans, many months prior to the refinance on August 31, 1998 that is at issue here. The existence of insurance coverage prior to August 31, 1998 suggests that the Plaintiff was already covered by insurance on the date of the Ford and Chevy loans by virtue of pre-existing notes.

This Court is generally familiar with insurance and is aware that nearly all insurance is prospective in nature; that is, premiums are paid in advance for insurance to be provided.[14] Indeed the Certificate of Insurance appended to the Defendant's affidavit submitted in support of its first summary judgment response states, in part "[w]e certify that while we are paid the premiums for the Group Policy by the credit union as they become due, you are insured for the coverage marked in the Schedule ...."[15] Judge Pusateri either did not consider this document or find it persuasive on the issue of whether the premiums were payable in arrears or prospectively. Standing alone, it was not helpful.

Now the Defendant has supplied this Court with further information concerning how the premiums are calculated and accrued against principal. Specifically, Defendant states in its response to the requests for admission that "[t]he computer program used treats the premium as added on the *payment date* and assumes it is paid that day, even though all premiums are determined on a date certain [25th of the month], as it would be impossible to determine [the] premium using individual payment dates." (Emphasis added). No insurance premiums were due on August

---

**11.** Dkt. 47, p. 6.

**12.** *See Jenkins v. Wood,* 81 F.3d 988, 990 (10th Cir.1996) reciting summary judgment standards.

**13.** *See* Defendant's Answer to Request for Admission No. 10 and No. 11.

**14.** *See Kuhfeldt v. Liberty Mutual Insurance Co.,* 833 F.Supp. 632 (E.D.Mich.1993).

**15.** Affidavit of W. Keith Huemann dated August 16, 2000, attached in support of Defendant's response to Plaintiff's first summary judgment motion.

31, 1998, the date the loans were refinanced and the TILA disclosures made. This information, read with the Certificate quoted above, enables this Court to find as a fact that the insurance coverage is only available to the Plaintiff after she elects it and that the coverage is conditioned upon the Defendant's payment of the premium on the payment date. Plaintiff pays her share of the premium with her monthly payment and thus, the coverage provided is prospective in nature.

### Analysis and Conclusions of Law

■ Part 226.2(a)(14) of Regulation Z defines "credit" as "the right to defer payment of debt or to incur debt and defer its payment." The Staff Commentary excludes insurance premiums from the definition of "credit" under this subparagraph of Regulation Z where, as here, the plan involves "payment in installments with each installment representing the payment for insurance coverage for a *certain future period of time,* unless the consumer is contractually obligated to continue making payments."[16] This Court concludes that as a matter of law, payments may include the payment of insurance premiums whether or not they are part of the amount financed or the finance charge.[17]

In order to be included in a disclosure of the Amount Financed, an amount must be "financed by the creditor and ... not part of the finance charge."[18] As Plaintiff points out, the Staff Commentary states that "[f]ees or other charges that are not part of the finance charge and *that are*

*financed* rather than paid separately at consummation of the transaction" are to be included in the Amount Financed. "Typical examples are ... premiums for voluntary credit life and disability insurance excluded from the finance charge ...."[19] This no doubt refers to situations where the total premiums are added on at the front of the transaction and financed. In the instant case, the insurance premiums were calculated and added each month.

The premiums charged by the Defendant here are not "financed" as this Court understands that term. As noted above, the premiums are not "credit." Thus, the Defendant had no duty under TILA or Regulation Z to disclose them as part of the Amount Financed.

■ Having concluded that there is no violation of TILA, this Court likewise concludes that Plaintiff has no viable claim for a per se violation of the KCPA. Judge Pusateri has already denied Plaintiff's first summary judgment motion as it related to unconscionable practices under the KCPA as defined in KAN. STAT. ANN. § 50–627. Plaintiff's motion for summary judgment must therefore be DENIED.

The Defendant did not file a cross-motion for summary judgment, relying instead on its defenses and on its motion for summary judgment on its theory of recoupment. Fed.R.Civ.P. 56(d) requires this Court, in denying summary judgment, to make an order determining such facts

---

16. Reg. Z Official Staff Interpretations ¶ 226.2(a)(14) Supp. I, ¶ 1 (Emphasis added). *See also, Kuhfeldt v. Liberty Mut. Ins. Co.,* 833 F.Supp. 632 (E.D.Mich.1993) (No credit relationship exists and TILA inapplicable to monthly installment payment plan for car insurance premiums; the insured is under no obligation to continue making monthly installment payments; if monthly premium is not paid, the insurance is canceled.)

17. *See* Reg. Z Official Staff Interpretations ¶ 226.18(g) Supp. I, ¶ 1 (Emphasis added).

18. Reg. Z, ¶ 226.18(b)(2).

19. Reg. Z Official Staff Interpretations ¶ 226.18(b)(2) Supp. I, ¶ 1 (Emphasis added).

as are without substantial controversy.[20] Under the uncontroverted facts presented here, Plaintiff's cause of action under TILA would certainly fail. "The failure to demonstrate that there is a genuine issue of material fact as it relates to a particular claim or aspect of a claim may therefore support a ruling eliminating that issue from the litigation."[21] No purpose would be served by prolonging this adversary proceeding in the face of this Court's findings of fact and conclusions of law and, accordingly, judgment should be entered for Defendant on Plaintiff's complaint and Defendant's motion for summary judgment on its recoupment theory will be DENIED as moot. A Judgment on Decision so holding will issue forthwith.

### JUDGMENT ON DECISION

The plaintiff Cheryl Kay Nave moves for summary judgment on her adversary complaint alleging violations of the Truth in Lending Act ("TILA") and the Kansas Consumer Protection Act ("KCPA") as a result of TILA disclosures made by the Community America Credit Union relating to two vehicles it financed. Specifically, the plaintiff contends that Community America Credit Union's failure to include the amount of premiums for credit life insurance and credit disability insurance in the "Amount Financed" constitutes a violation of TILA and is an unconscionable practice under the KCPA.

As set forth in the Memorandum Opinion issued this date, the Court finds that there are no genuine issues of material fact, and that in reviewing the facts in a light most favorable to defendant the plaintiff's supplemental motion for summary judgment must be denied.

It is therefore ORDERED, ADJUDGED, AND DECREED that plaintiff has failed to establish, as a matter of law, a violation of the TILA by Community America Credit Union and has failed to establish that Community America Credit Union's disclosures were unconscionable practices in violation of the KCPA. Plaintiff's supplemental motion for summary judgment on her adversary complaint is DENIED. Community America Credit Union's motion for summary judgment on the issue of recoupment is MOOT. The above adversary proceeding is therefore dismissed with prejudice.

IT IS SO ORDERED.

---

20. Fed.R.Civ.P. 56 is made applicable to adversary proceedings by Fed. R. Bankr.P. 7056.

21. 11 MOORE'S FEDERAL PRACTICE ¶ 56.40[2] (2003).